UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SARAH E. MCKINNEY,                     )
                                       )   No. CV-06-3036-MWL
          Plaintiff,                   )
                                       )   ORDER GRANTING DEFENDANT'S
v.                                     )   MOTION FOR SUMMARY JUDGMENT
                                       )
JO ANNE B. BARNHART,                   )
Commissioner of Social                 )
Security,                              )
                                       )
          Defendant.                   )
                                       )

    BEFORE THE COURT are cross-motions for summary judgment,

noted for hearing without oral argument on October 30, 2006. (Ct.

Rec. 12, 17).  Plaintiff Sarah McKinney ("Plaintiff") filed a

reply brief on October 2, 2006.  (Ct. Rec. 19).  Attorney Kathryn

Tassinari, appearing pro hac vice (Ct. Rec. 16), represents

Plaintiff; Special Assistant United States Attorney Carol A. Hoch

represents the Commissioner of Social Security ("Commissioner").

The parties have consented to proceed before a magistrate judge.

(Ct. Rec. 11).  After reviewing the administrative record and the

briefs filed by the parties, the Court **GRANTS** Defendant's Motion

for Summary Judgment (Ct. Rec. 17) and **DENIES** Plaintiff's Motion

for Summary Judgment (Ct. Rec. 12).

///

**JURISDICTION**

On December 18, 2001, Plaintiff filed an application for Supplemental Security Income ("SSI") benfits, alleging disability since October 19, 2001, due to residual limitations stemming from a left hip fracture and a right hand injury. (Administrative Record ("AR") 128-131, 163). Plaintiff's application for SSI was denied initially and on reconsideration.

On September 2, 2004, Plaintiff appeared before Administrative Law Judge ("ALJ") James Caulfield, at which time testimony was taken from Plaintiff and vocational expert Jeffrey Tittlefitz. (AR 45-101). On March 17, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 15-24). The Appeals Council denied a request for review on February 22, 2006. (AR 7-10). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on April 26, 2006. (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 55 years old on the date of the ALJ's decision, earned a GED and has past work experience as a janitor, maid, food service worker, laundry room worker and dubbing machine operator. (AR 16, 164). Plaintiff indicated that she stopped working on October 19, 2001, the alleged onset date of disability, because she "[g]ot laid off, couldnt [sic] perform my job duties to my ability." (AR 163).

Plaintiff testified at the administrative hearing held on September 2, 2004, that she last worked in October of 2001 as a janitor for a four-month period.  (AR 54).  She indicated that she worked full-time cleaning buildings, and the work consisted of sweeping, vacuuming, emptying garbage cans, cleaning bathrooms and wiping down desks, doors and mirrors in the offices.  (AR 54-55, 85).  She stated that the job ended, and she was laid off, due to lack of work, but she also indicated that she could no longer keep up with the work demand due to her physical condition.  (AR 55, 56).

Plaintiff described her hip pain as pain which extends from her hip into her groin and back of her leg when she overdoes it.  (AR 59).  She indicated that housework, driving and walking, as well as her work as a janitor, would be overdoing it.  (AR 59).  She testified that, in October of 2001, she could be on her feet for about 45 minutes before the pain would spread down her leg.  (AR 60).  After 45 minutes she would need to take a 10 minute break off her feet.  (AR 60).  At the time of the administrative hearing, Plaintiff indicated that she could only be on her feet for 25 to 30 minutes at a time.  (AR 61-62).  Plaintiff stated that she also has pain when sitting, stemming from a 1995 automobile accident, and could sit no more than 30 minutes before having a problem.  (AR 67-68).  When asked how long she could go during an eight-hour day by alternating at will between sitting and standing, Plaintiff indicated she could go about three and one-half hours.  (AR 96-97).

///

///

- 3 -

1    Plaintiff testified that she continues to do housework,

2  including vacuuming, sweeping, laundry and dishwashing.  (AR 68).

3  She stated that each day she spends four to five hours doing her

4  housework.  (AR 68).

5                    **SEQUENTIAL EVALUATION PROCESS**

6    The Social Security Act (the "Act") defines "disability" as

7  the "inability to engage in any substantial gainful activity by

8  reason of any medically determinable physical or mental impairment

9  which can be expected to result in death or which has lasted or

10  can be expected to last for a continuous period of not less than

11  twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

12  Act also provides that a Plaintiff shall be determined to be under

13  a disability only if his impairments are of such severity that

14  Plaintiff is not only unable to do his previous work but cannot,

15  considering Plaintiff's age, education and work experiences,

16  engage in any other substantial gainful work which exists in the

17  national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

18  Thus, the definition of disability consists of both medical and

19  vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

20  (9th Cir. 2001).

21    The Commissioner has established a five-step sequential

22  evaluation process for determining whether a person is disabled.

23  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is

24  engaged in substantial gainful activities.  If he is, benefits are

25  denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the

26  decision maker proceeds to step two, which determines whether

27  Plaintiff has a medically severe impairment or combination of

28  impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy"

which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).
///

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, October 19, 2001. (AR 17). At step two, the ALJ determined that Plaintiff has the severe impairments of history of hip and lumbar fractures, cervical strain, scoliosis and degenerative disc disease of the lumbar spine, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 18-19).

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light exertion level work, with additional restrictions. (AR 19). He found that Plaintiff is able to perform light work but she is limited to standing and

walking for no more than 30 to 60 minutes at a time. (AR 19-20).
At step four of the sequential evaluation process, the ALJ found
that, based on Plaintiff's RFC, she could perform her past
relevant work as a music dubber as previously performed. (AR 22-
23). Accordingly, the ALJ determined at step four of the
sequential evaluation process that Plaintiff was not disabled
within the meaning of the Social Security Act. (AR 23-24).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of
law. Specifically, she argues that:

1. The ALJ erred by rejecting the opinions of Plaintiff's
treating physician, Robert M. Burton, M.D.; and

2. The ALJ erred by failing to provide clear and convincing
reasons for rejecting Plaintiff's testimony.

This Court must uphold the Commissioner's determination that
Plaintiff is not disabled if the Commissioner applied the proper
legal standards and there is substantial evidence in the record as
a whole to support the decision.

**DISCUSSION**

**A.  Treating Physician**

Plaintiff contends that the ALJ improperly rejected the
opinions of treating physician Robert M. Burton, M.D. (Ct. Rec.
12-1, pp. 14-17). In a disability proceeding, the treating
physician's opinion is given special weight because of his
familiarity with the claimant and the claimant's physical
condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).
To reject the treating physician's opinion, the ALJ must state
specific, legitimate reasons that are supported by substantial

evidence.  *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.  If uncontradicted by other medical opinions, the treating physician's opinion may not be rejected unless the ALJ provides clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner responds that the ALJ properly rejected the disability findings and limitation opinions of Dr. Burton by providing clear and convincing reasons supported by substantial evidence.  (Ct. Rec. 18, pp. 12-18).  The undersigned agrees.

Dr. Burton indicated in an August 12, 2002 letter to Plaintiff's attorney at the time that Plaintiff would not be able to sustain work activity day in and day out, eight hours per day, five days a week, without absences greater than two days per month.  (AR 286).  Dr. Burton indicated in this letter that he believed Plaintiff was disabled according to the definitions employed by the Social Security Administration. (AR 286).

On March 25, 2004, Dr. Burton filled out a form provided by Plaintiff's attorney at the time.  (AR 456-457).  Dr. Burton indicated in the space provided on the questionnaire that Plaintiff was not able to sustain light or sedentary work.  (AR 457).  Dr. Burton stated that Plaintiff's diagnoses were persistent pelvic, pubic, and sacral fracture pain, diabetes, fibromyalgia, asthma, and poor tolerance of psychological stress, her symptoms consisted of persistent pain and fatigue worsened by stress, and the objective medical findings upon which his diagnoses were based were "x-rays, labs, BP, etc."  (AR 456).
///
///

On May 25, 2004, Dr. Burton again filled out a questionnaire form provided by Plaintiff's attorney at the time. (AR 472-473). Dr. Burton indicated that he based his diagnoses on a March 1996 sacral MRI as well as other films in Dr. McNabb's possession. (AR 472). Dr. Burton opined that, as a result of Plaintiff's impairments, she could not sustain standing or walking from more than 30 to 60 minutes throughout an eight hour workday. (AR 473). He further opined that she was not capable of light work for physical reasons and that she does not have the background experience, temperament or psychological hardiness suitable for the demands of sedentary work. (AR 473). Yet, Dr. Burton also answered that Plaintiff was able to lift and carry objects weighing up to 20 pounds. (AR 473).

On October 12, 2004, Dr. Burton filled out another form provided by Plaintiff's counsel. (AR 478). Dr. Burton indicated on this questionnaire that Plaintiff could stand 30 to 60 minutes at one time and twice total for a maximum of two hours in an eight hour work day. (AR 478). He additionally opined that Plaintiff could walk five to 10 minutes at one time, with a maximum of 90 minutes in an eight hour work day. (AR 478).

The ALJ rejected Dr. Burton's RFC opinions noting that he was very non-specific about supporting objective medical evidence, his opinions were provided by merely checking a form with little substantiation, and the opinions were vocationally based. (AR 20).

As noted by the ALJ, Dr. Burton was "very non-specific about citing any objective medical findings" to support his conclusions. (AR 20). On the March 25, 2004 questionnaire form, Dr. Burton

stated that the objective medical findings upon which his diagnoses were based were "x-rays, labs, BP, etc." (AR 456). On the May 25, 2004 form, Dr. Burton indicated that he based his diagnoses on a March 1996 sacral MRI as well as "other films in Dr. McNabb's possession." (AR 472). These vague references to medical evidence fail to support Dr. Burton's severe limitation findings.

An ALJ may discredit a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly gave minimal weight to a treating physician's opinion, because it was based on the claimant's subjective complaints without objective evidence, was conclusionary in the form of a check-list, and lacked substantive medical findings to support her conclusion); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ properly rejected a treating physician's opinion because it was unsupported by rationale or treatment notes and offered no objective medical findings to support the existence of the claimant's alleged conditions).

The x-rays of which Dr. Burton cited apparently refers to a June 7, 2001 x-ray which revealed an "old healed" pubic fracture, mild degenerative disc disease and mild scoliosis.[1] (AR 270). The March 19, 1996 MRI revealed several sacral fractures; however, the MRI was performed over 10 years ago and soon after Plaintiff's

---

[1]It is significant to note that, with regard to the June 7, 2001 x-ray, Plaintiff's treating physician, Craig D. McNabb, M.D., indicated that he really did not see any acute pathology from the x-ray. (AR 260). He recommended that she continue working and not change her current treatment plan. (AR 260).

car accident.  (AR 273).  These records do not document functional
limitations stemming from the injuries, Dr. Burton does not cite
objective evidence obtained from his own examinations in support
of the functional limitations he found, and the injuries did not
prevent Plaintiff from continuing to work, as she continued to
work until October 19, 2001.  (AR 163).  Dr. Burton failed to
provide adequate objective medical evidence to substantiate the
conclusory opinions he gave on the questionnaire forms.

The ALJ also noted that in the March 25, 2004 questionnaire,
Dr. Burton merely checked the form, marking "No" in response to
questions as to whether Plaintiff could sustain light or sedentary
work.  (AR 20, 457).  A check-box form is entitled to little
weight.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)
(stating that the ALJ's rejection of a check-off report that did
not contain an explanation of the bases for the conclusions made
was permissible).  Dr. Burton failed to adequately explain the
bases for the severe functional limitation he described.

Dr. Burton's conclusions that Plaintiff is disabled and
unable to perform light or sedentary level work is also not
supported by the weight of the evidence of record.  On June 7,
2001, Plaintiff's treating physician, Craig D. McNabb, M.D., saw
Plaintiff for consultation for low back pain. (AR 259-260).  Dr.
McNabb indicated that he did not see any acute pathology from the
x-rays that were performed and recommended that she continue with
work.  (AR 260).  On February 18, 2002, Plaintiff was examined by
K. Clair Anderson, M.D.  (AR 248-251).  Dr. Anderson indicated
that Plaintiff had no significant objective findings and opined
that Plaintiff does not have a major orthopedic problem of the

spine. (AR 251). On June 10, 2002, a medical consultant, Marin
Kehrli, M.D., reviewed the record and indicated that Plaintiff
retains the capacity for at least medium level work. (AR 285).
A physical residual functional capacity assessment form was filled
out by a state agency reviewing physician, Sharon Eder, M.D., on
October 10, 2002. (AR 398-405). The reviewing physician opined
that Plaintiff could occasionally lift and carry 20 pounds,
frequently lift and carry 10 pounds, stand and/or walk and sit
about six hours each in an eight hour workday, push and pull
without restriction and had postural limitations which
occasionally limited her. (AR 399-400).[2] Dr. McNabb examined
Plaintiff on July 7, 2003 for continuing low back pain. (AR 413-
414). Dr. McNabb recommended a long-acting narcotic medication to
treat her pain, but did not mention any functional limitations as
a result of Plaintiff's complaints of back pain. (AR 414). On
January 4, 2005, John Place, M.D., examined Plaintiff, reviewed
July 2003 x-rays, and conducted new x-rays of Plaintiff's pelvis
and hips. (AR 495-496). Dr. Place indicated that the x-rays
showed evidence of an old healed superior and inferior pubic ramus
fracture on the right, and a pubic fracture of the left, with an
intact pelvic rim and normal relationship at the sacroiliac
joints. (AR 495). The hip joints were normal and symmetrical.
(AR 495). Dr. Place noted that Plaintiff's hip joints were both
normal in appearance on x-ray, and her hip motion was essentially
symmetrical. (AR 496). He advised Plaintiff "to remain active
and encouraged in walking, exercise, etc." (AR 496). No other

---

[2]It is significant to note that, in her October 2002 report, Dr. Eder
indicated that Plaintiff was working 22 hours per week and was "last seen
4/02 in Ortho w/o problems to back." (AR 403).

physician of record has opined that Plaintiff is disabled or as physically limited as described in the questionnaire forms completed by Dr. Burton.

Finally, it was additionally proper for the ALJ to reject Dr. Burton's opinion as vocationally-based. Although a physician may make statements regarding what a Plaintiff can still do despite her impairments and her physical or mental restrictions, the final responsibility for deciding the issue of disability is reserved to for the Commissioner. A statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine that a claimant is disabled as defined by the Social Security Act. 20 C.F.R. § 416.916(e)(1). Opinions concerning the ultimate issue of disability are reserved for the Commissioner.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). In any event, the Court finds that the ALJ thoroughly analyzed the evidence of record (AR 17-22) and provided clear and convincing reasons for rejecting Dr. Burton's opinions that Plaintiff was severely limited from a physical standpoint and disabled. The ALJ did not err by rejecting the opinions of Dr. Burton in this case.

///

**B.  Plaintiff's Credibility**

Plaintiff also argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting her testimony. (Ct. Rec. 12-1, pp. 17-19).  The Commissioner responds that, based on Plaintiff's daily activities, work history and the objective medical evidence, the ALJ properly determined that Plaintiff's testimony was unconvincing.  (Ct. Rec. 18, pp. 6-12).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  In this case, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible.  (AR 21-23).

The ALJ indicated that Plaintiff's description of limited daily activities was inconsistent with the record evidence.  (AR 21).  It is well-established that the nature of daily activities may be considered when evaluating credibility.  *Fair*, 885 F.2d at 603.  As noted by the ALJ, Plaintiff testified that each day she spends four to five hours doing her housework.  (AR 21, 68).  She stated that she continues to do vacuuming, sweeping, laundry and

dishwashing. (AR 21, 68).  The ALJ also noted a May 2001 report which indicated that Plaintiff performs household chores weekly, works doing laundry and was taking care of a nine-month old child. (AR 21, 242).  As noted by the Commissioner, the work-like nature of Plaintiff's daily activities was particularly relevant because Plaintiff alleged she could no longer perform similar activities. (Ct. Rec. 18, pp. 8-9).  It was entirely proper for the ALJ to consider Plaintiff's reported daily activities when evaluating Plaintiff's credibility.

The ALJ also noted that Plaintiff's allegation of disability was inconsistent with the medical reports of record.  (AR 21).  As noted in Section A, on June 7, 2001, Dr. McNabb indicated that he did not see any acute pathology from the x-rays that were performed and recommended that she continue with work.  (AR 260). On February 18, 2002, Dr. Anderson indicated that Plaintiff had no significant objective findings and opined that Plaintiff does not have a major orthopedic problem of the spine.[3]  (AR 251).  On June 10, 2002, Dr. Kehrli, reviewed the record and indicated that Plaintiff retains the capacity for at least medium level work. (AR 285).  A physical residual functional capacity assessment form filled out by a state agency reviewing physician on October 10, 2002, indicated that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk and sit about six hours in an eight hour workday, and push and

///

///

---

[3]The ALJ noted that Dr. Anderson's examination revealed that Plaintiff had a normal gait and a level pelvis, she was able to heel/toe walk normally, her motor power was intact and her reflexes were equal and symmetrical. (AR 21).

pull without restriction. (AR 399). As noted by the ALJ, Dr. McNabb's July 7, 2003 examination revealed that Plaintiff was able to ambulate about the medical office and that she had good strength throughout her lower extremities. (AR 21, 413). On January 4, 2005, Dr. Place noted that Plaintiff's hip joints were both normal in appearance on x-ray, and her hip motion was essentially symmetrical. (AR 496). He advised Plaintiff to remain active and encouraged her to walk and otherwise exercise. (AR 496). The weight of the medical evidence of record is simply inconsistent with Plaintiff's claim of disabling limitations.

Lastly, the ALJ indicates that Plaintiff's work history erodes her claim of a physical inability to perform work activities. (AR 21). An ALJ may consider a claimant's work record as a factor when evaluating credibility. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). As noted by the ALJ, while Plaintiff alleges debilitating pain has existed since her 1995 motor vehicle accident, she continued to work as a janitor until at least October of 2001.[4] (AR 21). Plaintiff described this work as consisting of cleaning buildings for eight hours a night, standing/walking for the majority of the shift, carrying and lifting trash six times a night, and mopping and vacuuming for at least two-thirds of her shift. (AR 21-22, 164). The ALJ found it difficult to believe that Plaintiff had the degree of pain alleged but was still able to perform at this level of physical exertion. (AR 21).

---

[4]The Commissioner points out that, although Plaintiff asserts that she required frequent rest during her shift, whatever rest Plaintiff needed, it did not detract from her ability to work competently for a period of many months. (Ct. Rec. 18, pp. 9-10).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). After reviewing the record, the undersigned finds that the ALJ appropriately specified clear and convincing reasons for finding that Plaintiff's allegations were not fully credible in this case.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is capable of performing a modified light level of physical exertion work, including her past job as a music dubber, is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 12**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 17**) is **GRANTED**.

///

///

///

       3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

    **DATED** this   29th   day of December, 2006.

                                  s/Michael W. Leavitt
                                  MICHAEL W. LEAVITT
                        UNITED STATES MAGISTRATE JUDGE